19 F.3d 20
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edward L. WADE, Defendant-Appellant.
 No. 93-5821.
 United States Court of Appeals, Sixth Circuit.
 March 8, 1994.
 
 Before: MARTIN and BATCHELDER, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Edward Lamont Wade appeals his convictions by a jury on charges of possession with intent to distribute cocaine, conspiracy to commit a drug trafficking crime, and using a firearm during and in relation to a drug trafficking crime.
 
 
 2
 On the afternoon of December 3, 1991, drug enforcement agent Patrick Howell of the Tennessee Bureau of Investigation made a controlled cocaine purchase, for the fifth time, from Reginald Merritt in Nashville. Howell arrested Merritt after this transaction, and asked him to cooperate in apprehending Merritt's suppliers. In making his request, Howell stated that the prosecutor would be informed that Merritt had cooperated with the investigation. Merritt agreed, and gave drug enforcement agents a telephone pager/"beeper" number with a secret code that he used to contact his suppliers, whom he identified as Lamont Wade and Phil Green. Merritt also stated that the cocaine he had sold to Howell was supplied to him that day by Wade. Howell and Merritt then made a tape-recorded call to the beeper number from Bureau headquarters. A man, allegedly Lamont Wade, answered and had a short conversation with Merritt. The call ended with the understanding that Merritt would call Wade later. Merritt then told Howell that after he completed his cocaine sales, he would normally meet Wade or Green at a car wash in southeast Nashville in order to turn over the sale money.
 
 
 3
 Howell and other agents decided to attempt to draw Wade to a meeting. DEA agent Lewis Lawrence drove Merritt to the car wash area and found a pay phone. Merritt called the pager number, and Phil Green answered. Merritt told Green that he "had the money," and that the area looked clear for a pick-up. According to Merritt, Green responded that he would have Wade call Merritt back with instructions. After a few minutes, Lamont Wade allegedly called the pay phone. Merritt told Wade that he was at the car wash, and that he had the money. Wade responded that he would meet Merritt there five minutes later. Agent Lawrence and Merritt then drove to the car wash and parked in Merritt's "accustomed" area--a side spot out of the car wash line. By this time, Merritt was wearing a body wire. After a few minutes, Merritt saw Wade's car approaching "before he made the turn," and said "Here he come in the blue car." This car pulled into the car wash area and parked next to Merritt's car. Merritt got out of his car, saying "This is him, this is him." At this point, several agents with drawn guns converged on Wade's car, identifying themselves as police, and ordered Wade out of the car. When Wade hesitated, the agents pulled him from the car and handcuffed him as he struggled. The agents recovered a fully-loaded 9-millimeter pistol from the back of Wade's waistband, the area that he apparently had been trying to reach towards during the struggle.
 
 
 4
 At Bureau headquarters, after reading Wade his Miranda rights, the agents asked him to cooperate. Wade denied wrongdoing and stated that he had only come to the car wash in order to pick up Merritt, because Phil Green had explained to him that Merritt's car had broken down. Agent Howell then offered Wade the chance to call Green and exonerate himself. Wade made the call to the pager number, but did not mention Merritt's car trouble in the ensuing conversation, nor the fact that Green was supposed to have sent Wade to pick up Merritt.
 
 
 5
 Wade was indicted on October 15, 1992, and charged with possession of cocaine with intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2; conspiracy to distribute cocaine, in violation of 21 U.S.C. Sec. 846; and using a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. Sec. 924(c). Wade was arrested on October 27. On February 26, 1993, the district court denied Wade's motion to suppress the handgun and the statements he made to the police on December 3, 1991. On March 5, a jury convicted Wade on all three counts of the indictment, after the district court denied Wade's motion for a directed verdict of acquittal at the close of the evidence. The district court imposed a sentence of one year and nine months imprisonment on the possession and conspiracy counts, and five years on the handgun count to run consecutively, for a total of six years and nine months. Wade then filed this timely appeal.
 
 
 6
 Wade argues that: (1) the district court improperly denied his motion to suppress evidence; and (2) the evidence admitted at trial was insufficient to convict him of the crimes charged. With respect to the first assignment of error, Wade maintains that the officers did not have probable cause to arrest him at the car wash, citing Wong Sun v. United States, 371 U.S. 471 (1963), and United States v. Perkins, 994 F.2d 1184, 1187 (6th Cir.1993) (court of appeals reviews de novo question of whether probable cause existed for warrantless search). Wade claims that the agents did not establish that Merritt's information was reliable, nor did they ascertain the basis of Merritt's knowledge. He also points to the trial testimony of one of the agents that they had intended to "arrest" anyone that Merritt identified as "Wade" who pulled into the car wash on December 3, 1991. According to Wade, the statements and gun were the fruit of an illegal arrest and should have been suppressed.
 
 
 7
 With respect to the second error, insufficiency of the evidence, Wade claims that the unreliable nature of Merritt's testimony made him totally unbelievable. He also points to the fact that Agent Howell's initial written report identified Phil Green as the cocaine supplier, instead of Wade.
 
 
 8
 The government, in response, claims that the initial detention of Wade was a Terry -type encounter, citing Terry v. Ohio, 392 U.S. 1 (1968), and United States v. Hardnett, 804 F.2d 353 (6th Cir.1986). It maintains that the officers had specific, articulable facts provided by Merritt that justified the original stop, based on an objective standard of reasonable suspicion of criminal activity. We agree, and find that the district court properly declined to suppress Wade's statements and the gun.
 
 
 9
 With respect to the sufficiency of the evidence argument, the standard under Jackson v. Virginia, 448 U.S. 307, 319 (1979) has been satisfied: the facts taken in the light most favorable to the United States support the conclusion that Wade committed the crimes charged beyond a reasonable doubt. We note the inconsistency between Wade's alibi defense and statements made after his initial arrest, as well as additional testimony from a telephone company billing representative that Wade had come in to complain about the charges to the pager number supplied by Merritt, and had paid those charges. Finally, the evidence taken in the light most favorable to the government showed that Wade, not Green, was the supplier of the cocaine in question, and that Agent Howell merely made an error in his report when he identified the supplier as Green.
 
 
 10
 Based upon this, Wade has failed to convince us that error was committed and the judgment of the district court is therefore affirmed.